# Neely's Appeal.   Cozad's Appeal.

1. Equity follows the law, in relation to lapse of time, in analogy to the Statute of Limitations.

2. In 1849 a court of equity in Pittsburgh made a decree that A. should deliver to B. certain plans and papers. B. remained in Pittsburgh for several years without making any effort to enforce compliance with this decree and in 1854 removed to another state. A. died in 1865, and by his will bequeathed the use of the plans and papers to his brother C., who took possession of them, and in 1873 sold them to D. & E. B. returned to Pittsburgh in 1871, and in 1874 filed a bill against the executor of C., and also against D. & E., and sought to enforce the original decree. It appeared that D. & E. had purchased the plans in good faith and for a valuable consideration. B. was also present when D. & E. were copying the plans and saw them hauled away for the purpose of being copied, and made no claim to them: *Held*, that the Statute of Limitations was a bar to the suit. *Held, further*, that B. was guilty of gross laches and had no standing in a court of equity.

November 2d 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeals from the decree of the Court of Common Pleas, No. 2,

[Neely's Appeal.]

of *Allegheny county* : Of October and November Term 1877, Nos. 201 and 202.

These were the appeals of Mary H. Neely, executrix of Condorcet McGowin, deceased, and of J. G. Thompson, M. E. Cozad and C. C. Cozad, partners as Cozad, Thompson & Co., from the decree of the court directing Cozad, Thompson & Co. to pay to Z. W. Remington the balance of money in their hands, on the purchase of certain papers and instruments from C. McGowin, and further ordering that the costs of the proceedings, out of which the decree arose, should be paid by the estate of said C. McGowin, deceased.

The proceedings were by bill in equity filed by Z. W. Remington, against the appellants in each of the above appeals, and prayed the court to decree the return to complainant of certain plans, maps, drafts, furniture and surveying instruments which one R. E. McGowin had obtained and retained in his possession.

The remaining material facts will be found in the opinion of this court.

*John M. Kennedy, James C. Doty* and *James Grier,* for appellants.—The complainant contends that a decree was made in his favor against R. E. McGowin in 1849; that R. E. McGowin died in 1865; that Condorcet McGowin then came into possession of the plans not delivered by R. E. McGowin in compliance with said decree; that Condorcet McGowin sold these plans, December 19th 1873, to Cozard, Thompson & Co., who had them when his bill was filed in 1874.    Under these facts was not complainant barred ?

The Statute of Limitations is applied with the same effect in a court of equity as in a court of law : Hamilton *v.* Hamilton, 6 Harris 20 ; Todd's Appeal, 12 Id. 42 ; Smilie *v.* Biffle, 2 Barr 53 ; Story Eq. Jur., sect. 529 ; Brightly's Eq. Jur., sect. 647.

The plaintiff was guilty of gross laches in allowing R. E. McGowin and Condorcet McGowin to retain all the indicia of ownership for so long a time, and is thereby barred from making any claim.    Equity will not grant relief where a party has been guilty of laches.

*James Fitzsimmons,* for appellee.—The gist of the action was the specific delivery of the plans, maps and papers.    The decree was entered, but the delivery of the property was not enforced under the decree ; hence the old proceedings must be considered as *lis pendens* and notice to all : Yeavery *v.* Yerverly, 3 Ch. Rep. 48 ; Gaskell *v.* Durdin, 2 Ball & B. 169 ; Diamond *v.* Lawrence County, 1 Wright 353 ; Fessler's Appeal, 25 P. F. Smith 502 ; Kerr *v.* Watts, 6 Wheat. 550 ; Haughwout *v.* Murphy, 7 C. E. Green 531, 544 ; Adams' Eq. 157 ; Bispham's Eq. 267.    "A decree by consent in a personal estate binds a purchaser for a valuable consideration."

Windham *v.* Windham, 3 Ch. Rep. 22; s. c. 2 Freem. 127. Courts of equity will not apply the Statute of Limitations to a demand purely of an equitable nature: Singleton *v.* Moore, Rice Ch. Rep. 110; Stedwell *v.* Anderson, 21 Conn. 142; Chapman *v.* Butler, 22 Maine 191; Bland *v.* Davison, 21 Beav. 312.

Mr. Justice PAXSON delivered the opinion of the court, November 19th 1877.

This is a stale claim. On the 6th day of September 1847, Z. W. Remington filed his bill of complaint against R. E. McGowin, setting forth that the said McGowin, then a practising surveyor and civil engineer, had obtained from complainant a large number of plans, papers, drafts, surveying instruments and furniture, as set forth specifically and at length on the record in said case; that the said McGowin was making copies of said plans, &c., and that he retained possession and refused to deliver the same to the complainant, to whom they rightfully belonged, and praying the court to order and decree the return and delivery of said plans, &c., to plaintiff. The cause was so proceeded in, that on the 13th day of January 1849, the court made a decree that the said McGowin should deliver the papers, maps, plans, &c., to the master for the purpose of having the same delivered to the complainant. It is now alleged that the papers were never delivered in accordance with this decree. Remington remained in Pittsburgh for several years after the termination of his case, making little effort to enforce compliance with the decree, and removed to Iowa in 1854, where he resided until 1871, and then returned to Pittsburgh. On the 5th day of June 1874 this bill was filed against Mary H. Neely, executrix of Condorcet McGowin, deceased, and J. G. Thompson, M. E. Cozad, and C. C. Cozad, copartners as Cozad, Thompson & Co., setting forth the former decree in the suit against McGowin; that said decree has never been fully complied with; that R. E. McGowin died possessed of that part of the property not delivered, leaving the said Condorcet McGowin, his brother, in possession; that Condorcet McGowin sold or in some way disposed of said property to said Cozad, Thompson & Co., and that the same is still in their possession. The complainant attempts to account for the extraordinary delay in enforcing the decree in Remington *v.* McGowin by alleging that the records of said case were lost or stolen from the office of the prothonotary, involving, as he was advised and believed the commencing of his suit *de novo*. But it appears that the proceedings were spread at length upon the records, so that if the fact be that the papers filed in the cause were lost, the cause could have been proceeded in so far as regards the enforcing of the decree, which was all that remained to be done. The master finds that Cozad, Thompson & Co. purchased the plans in good faith for a valuable consideration, and without notice of any adverse claim.

[Neely's Appeal.]

Also, that the plaintiff was guilty of gross laches in allowing R. E. McGowin and Condorcet McGowin to retain all the evidence of ownership for so long a time, and is thereby barred from making any claim.   We think the facts of the case fully justify the findings of the master.   This is not a proceeding against R. E. McGowin. It is an attempt to enforce the original decree against him by following the property after his death in the hands of innocent third parties.   Were R. E. McGowin living and in possession of the property the decree might possibly be enforced against him, as the master finds there is sufficient evidence to overthrow the presumption arising from lapse of time that the original decree had been complied with.   But R. E. McGowin died in 1865; by his will he bequeathed the use of his surveying instruments, drafts, &c., to his brother, Condorcet McGowin, who took possession of the plans, drafts, &c., and in 1873 sold the same to Cozad, Thompson & Co.   The master finds that "the plaintiff was present at the office of Condorcet Mc-Gowin when Cozad, Thompson & Co. were making copies of some of the plans which he now claims.   He then made no claim.   He was afterwards present when Cozad, Thompson & Co. hauled them away.   He asked Condorcet McGowin what this meant, and was told that they were hauling them away for convenience in copying.   He made no claim to the plans, and did not object to their being taken away.   All the circumstances indicated that Condorcet McGowin was the owner of the plans, and there was nothing in the conduct of the plaintiff to lead the purchaser to think otherwise.

The appellants set up the Statute of Limitations as a defence, and the learned master held it to be a bar to this suit.   In this we think he was right.   In relation to lapse of time equity follows the analogy of the Statute of Limitations: Story's Equity, sect. 529; Todd's Appeal, 12 Harris 429; Ashhurst's Appeal, 10 P. F. Smith 290.   But laches for a much shorter time than six years, aided by other circumstances, will bar the right: Evans's Appeal, 31 P. F. Smith 278.   Here the plaintiff has been guilty of gross laches. When he filed this bill, the original decree which he thus sought to enforce, had been of record for twenty-five years; R. E. McGowin had been dead nine years, and the property in dispute had passed into the hands of other parties in entire good faith.   The plaintiff saw a portion of it in their possession, and made no claim to it until after a bona fide sale to an innocent purchaser.   It surely needs no argument to show that he has no standing in a court of equity.

The decree is reversed, and the bill dismissed with costs, to be paid by the appellees.